IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 25, 2009 Session

**ALEX FRIEDMANN v.
CORRECTIONS CORPORATION OF AMERICA**

**Appeal from the Chancery Court for Davidson County
No. 08-1105-I     Claudia C. Bonnyman, Chancellor**

---

**No. M2008-01998-COA-R3-CV - Filed September 16, 2009**

---

This Public Records Act case was filed by Alex Friedmann ("Plaintiff") against Corrections Corporation of America ("CCA"). Plaintiff seeks various records from CCA. Plaintiff claims that by operating prisons for the State of Tennessee and several local governmental entities in Tennessee, CCA is the functional equivalent of a governmental agency and, therefore, subject to the Public Records Act, Tenn. Code Ann. § 10-7-501 *et seq*. CCA maintains that it is not the functional equivalent of a governmental agency, that the Public Records Act does not apply to it, and even if it does, many of the records Plaintiff seeks are otherwise protected from disclosure. Following a hearing, the Trial Court determined that CCA was operating as the functional equivalent of a governmental agency and ordered production of most of the requested documents. CCA appeals. For the reasons discussed below, we find that CCA is operating its various facilities in Tennessee as the functional equivalent of a governmental agency. We also find that with respect to the South Central Correctional Center, the public records available to Plaintiff are limited to the documents identified in Tenn. Code Ann. § 41-24-117, which is part of the Private Prison Contracting Act of 1986. With respect to CCA's other facilities in Tennessee, we conclude that the provisions of Tenn. Code Ann. § 41-24-117 do not apply and, therefore, do not limit the documents available to Plaintiff. We remand this case to the Trial Court to determine if any of the requested documents are otherwise protected from disclosure. The judgment of the Trial Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.[1]

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery
Court Affirmed in Part and Reversed in Part; Case Remanded**

---

[1] Our first Opinion in this case originally was filed on August 5, 2009. Plaintiff thereafter filed a petition to rehear and, pursuant to this Court's order, CCA filed a response. The petition to rehear contains arguments that were not set forth in Plaintiff's original brief. While we ordinarily would consider such arguments waived, exercising our discretion we granted the petition, withdrew our original Opinion, and now address these new arguments.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Joseph F. Welborn, III, and Jason W. Callen, Nashville, Tennessee, for the Appellant, Corrections Corporation of America.

Andrew C. Clarke, Memphis, Tennessee, for the Appellee, Alex Friedmann, individually and as Associate Editor of Prison Legal News.

Richard L. Colbert, Franklin, Tennessee, for Amicus Curiae Tennessee Secondary School Athletic Association.

Tricia Herzfeld, Nashville, Tennessee, for Amicus Curiae The American Civil Liberties Union of Tennessee, The Associated Press, The Society of Professional Journalists, The Reporters Committee for Freedom of the Press, The American Society of Newspaper Editors, and The Association of Capitol Reporters and Editors.

## OPINION

### Background

Plaintiff is an associate editor of Prison Legal News, a publication which reports on news related to the criminal justice system. CCA is a private correctional service company that owns and/or operates numerous correctional facilities in nineteen states, including several facilities located in Tennessee. In May 2008, Plaintiff filed a petition seeking access to various documents in the possession of CCA. Plaintiff claimed these documents were public records pursuant to the Public Records Act, that he had requested production of these documents, and that CCA had refused his request. According to the petition:

> [CCA is] a company doing business in the [S]tate of Tennessee and performing the traditionally and uniquely state governmental function of operating a prison through contractual relationships with the State of Tennessee. . . .
>
> The Tennessee Public Records Act . . . applies to records "made or received" by CCA in connection with the transaction of official business by any "governmental agency," which includes those records in the hands of any private entity which operates as the functional equivalent of a governmental agency.
>
> At all times pertinent to the request, CCA operated prisons and/or jails under contract with either the state or local governmental

-2-

agencies. Operating a prison is exclusively and traditionally a governmental activity and public function. Therefore, at all times material hereto, CCA was acting as the functional equivalent of a governmental agency and bound by the terms of the Public Records Act.

* * *

[U]ntil the Private Prison Contracting Act of 1986, [Tenn. Code Ann. § 41-24-101], neither the [S]tate nor a private prison contractor could enter into a contract to provide correctional services at a prison in Tennessee. After passage of the Private Prison Contracting Act of 1986, the [S]tate could enter into contracts with private prison contractors such as CCA. However, under the Private Prison Contracting Act of 1986, the State has a statutory duty and obligation to monitor, regulate, supervise and oversee the conduct and performance of any and all private prison contractors such as CCA.

* * *

The Tennessee Public Records Act applies to CCA, notwithstanding that CCA is a private, for-profit corporation, because CCA operates as the functional equivalent of a governmental agency as CCA houses prisoners and manages detention facilities for the State of Tennessee. CCA performs a State function in return for which the State of Tennessee provides CCA with governmental funding. (original paragraph numbering omitted).

Plaintiff explained that before filing suit, he sent a public records request to CCA, but that request was denied in its entirety in a letter sent by CCA's attorney. Plaintiff sought entry of an order granting his request for access to records and an award of reasonable attorney fees.

Plaintiff's original request for documents was dated April 3, 2007. In that request, Plaintiff sought the following documents:

1) I am requesting the last complaint or amended complaint (or written claim) in each and every lawsuit, claim and other legal action filed against Corrections Corp. of America (CCA) and its subsidiary companies, originating in the State of Tennessee, in which CCA paid $500.00 (five hundred dollars) or more in damages, settlements and/or attorney fees to the claimant, plaintiff or petitioner . . . from January 1, 2002 through and including the date of this letter. This

request includes applicable claims or demands that were resolved prior to suit being filed.

2) I am requesting the verdict forms, releases, claim payment forms and/or settlement agreements in which CCA paid damages and/or attorney fees in each and every case specified in request number 1, above. These documents should include the case or claim number, identity of the parties, and the amount paid by CCA to satisfy the judgment, settlement or claim. I am requesting all such . . . [documents] from Jan. 1, 2002 through and including the date of this letter. This request includes applicable claims or demands that were resolved prior to suit being filed, and regardless of whether CCA contends that any such settlements or payments are or were confidential.

3) I am requesting all Tennessee state, county and municipal government reports, audits, investigations or other similar documents which found or alleged that CCA did not comply with one or more terms of its contracts to provide correctional services (including contracts to operate jails, prisons, immigration facilities, etc.) where said reports, audits, etc. were issued from January 1, 2002, through and including the date of this letter. Said reports, audits, etc. should include the identity of the agency issuing the finding, a description of the finding and any sanction(s) imposed for said contract violations.

4) I am requesting all Tennessee court rulings issuing injunctive relief or declaratory judgments against CCA, including sanctions and contempt orders, between January 1, 2002 through and including the date of this letter.

5) I am requesting all spreadsheets, summaries or similar databases showing all litigation concluded against CCA in Tennessee which resulted in the payment of money damages, settlements, sanctions, claims and/or attorney fees from January 1, 2002 through and including the date of this letter regardless of whether CCA contends that the payments of money damages are or were confidential. Said documents should include the names of the parties, name and location of the court, case/claim number, the amount paid, and type of claim. All cases or claims involving prisoner property damage or lost property should be excluded from these requested records. (emphasis in the original).

6)    I am requesting all final executed contracts and contract renewals between CCA, the State of Tennessee and/or any county or municipality in Tennessee regarding the ownership, management or operation of any jail, prison, holding facility, immigration facility, etc. from January 1, 2002 through and including the date of this letter.

A few weeks after receiving Plaintiff's initial request for documents, CCA sent Plaintiff a response. Although the response is several pages long, in summary CCA claimed: (1) that it was a private corporation and not subject to the Public Records Act; (2) CCA was not operating as the functional equivalent of a governmental agency; (3) even if CCA was subject to the Public Records Act, many of the requested documents nevertheless exceeded the scope of the Public Records Act because they were protected by the attorney work product doctrine or sealed by order of a court; (4) many of the requested documents were obtainable by Plaintiff either through the applicable court clerk's office or the governmental agency with which CCA had contracted; and (5) gathering all of the requested documents would be overly burdensome.

After the petition was filed with the Trial Court, CCA filed a detailed response to the petition and made the same assertions that were set forth in its letter responding to the initial request. CCA also filed the affidavit of Steve Groom ("Groom"), who has been employed by CCA since 2001 as its Vice President and Deputy General Counsel. According to Groom[2]:

> CCA was formed approximately twenty-five years ago, in 1983. CCA was not formed for the sole purpose of serving any Tennessee government functions. CCA was not established by a governmental entity or pursuant to any legislation. No law required CCA's creation or requires that it continue in existence. CCA was not created to avoid the requirements of the Tennessee Public Records Act. CCA is not managed or operated by the State of Tennessee or any of its subdivisions or local governments.
>
> Tennessee local and state agencies with whom CCA contracts have no involvement in CCA's corporate operations. CCA is operated at the direction of its Board of Directors and Officers, none of whom is a public official. Tennessee local and state officials have no veto power or approval rights over CCA's budgets.
>
> CCA employees are not state employees. CCA employees do not participate in government operated retirement plans by virtue of their

---

[2] The original affidavit consists of many short, one-sentence paragraphs, some of which have been combined when reproduced in this Opinion. We have omitted the portion of Groom's affidavit which addresses CCA's claim that some of the requested information was protected by the attorney work product doctrine.

employment with CCA. CCA hires and establishes the terms and conditions of employment for its employees.

CCA has contracts with multiple federal, state and local governments throughout the United States for managing and/or operating correctional facilities and detention centers. CCA controls the day-to-day operations of each of its correctional facilities or detention centers that it owns, manages and/or operates pursuant to contracts with numerous federal, state and local governments throughout the United States. At the Tennessee facilities that CCA owns, manages and/or operates, CCA employees provide recreational, health, and food services to inmates, while also administering disciplinary rules and procedures. CCA's management team at each facility supervises their employees' performance.

CCA receives compensation for contractual services provided pursuant to its contracts with federal, state, and local governments, including contracts with the State of Tennessee and local governments within the State. CCA does not receive direct public funding, financing, or subsidies from the State of Tennessee or any local governments. The compensation that CCA receives from Tennessee state and local governments totaled approximately 11.5% of CCA's overall revenue in 2007. The total percentage of Tennessee local and state inmates held in CCA facilities amounts to approximately 13.7%. . . .

Following a hearing, the Trial Court entered a detailed final order concluding that CCA was subject to the Public Records Act. According to the Trial Court:

> The Defendant Corrections Corporation of America (hereafter CCA) contracted with the State of Tennessee to build and operate some of its prisons. The Plaintiff made a written demand on CCA in April of 2007, that CCA "produce" certain records because they are public records. At a hearing in July 2008, this Court ruled from the bench, that for purposes of the Tennessee Public Records Act, CCA is operating as the functional equivalent of a state agency. The Court also ruled that certain records requested by the Plaintiff are public records. The Court now clarifies the bench ruling and amends to add analysis of Tenn. Code Ann. § 41-24-117, which addresses some of CCA's records and also addresses some of the records requested by the Plaintiff.

The Court interprets the terms of the Tennessee Public Records Act broadly, to enforce the public interest in open access to the records of state governmental entities. See *Memphis Publ'g Co. v. Cherokee Children & Family Servs.*, 87 S.W.3d 67 (Tenn. 2002). The Act provides in pertinent part that "[A]ll state . . . records . . . shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee . . . ." Tenn. Code Ann. § 10-7-503(a) (Supp. 2007) (now Tenn. Code Ann. § 10-7-503(a)(2)(A) as amended by 2008 Tenn. Pub. Acts ch. 1179, section 1, effective July 1, 2008). Tenn. Code Ann. § 10-7-301(6) defines public record to mean "[A]ll documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, or other material, regardless of physical form or characteristics made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency."

The Supreme Court of the State of Tennessee has interpreted the Act such that the definition of public records also includes records made and received in connection with the transaction of official business in the hands of any private entity which is the functional equivalent of a governmental agency:

> [T]he functional equivalency approach . . . provides a superior means for applying public records laws to private entities which perform "contracted out" governmental services. . . . [P]rivate entities that perform public services on behalf of a government often do so as independent contractors. Nonetheless, the public's fundamental right to scrutinize the performance of public services and the expenditure of public funds should not be subverted by government or by private entity merely because public duties have been delegated to an independent contractor. When a private entity's relationship with the government is so extensive that the entity serves as the functional equivalent of a governmental agency, the accountability created by public oversight should be preserved.

*Cherokee* at 78-79.

"The cornerstone of this analysis . . . is whether and to what extent the entity performs a governmental or public function, for we intend by our holding to ensure that a governmental agency cannot, intentionally or unintentionally, avoid its disclosure obligations under the Act by contractually delegating its responsibilities to a private entity." *Id*. at 79. The Court must decide, considering certain non-exhaustive factors, whether the public/governmental nature of CCA's activities, outweighs its private character such that the records made and received by CCA, in connection with the transaction of official (i.e., state) business, are public records under the Act. No single factor is dispositive. *Allen v. Day*, 213 S.W.3d 244 (Tenn. Ct. App. 2006). In this case, Tennessee has contracted out to CCA, functions which are historically those allocated to the people of the State pursuant to the Tennessee Constitution. Article I, Section 32 of the Tennessee Constitution 1870 states "[T]hat the erection of safe and comfortable prisons, the inspection of prisons, and the humane treatment of prisoners, shall be provided for." This section was amended in 1998 to remove the term comfortable.

In deciding that CCA is operating as the functional equivalent of a governmental agency, the Court [finds] that CCA performs the traditional governmental or public functions described in the Tennessee Constitution since 1870, and that these public functions outweigh its private identity for purposes of the Public Records Act.

The Court focuses upon the history of the State's obligation to operate prisons. In 1985, the Attorney General opined that ". . . the State must retain custody and control over its prisoners. This is because the State may not delegate or contract away its police powers or obligations imposed upon the State by the Constitution." Op. Tenn. Att'y Gen. No. 85-286 [Nov. 27, 1985)]. The opinion further states ". . . detention has traditionally been considered an exclusive prerogative of the state . . . . The power of governing is a trust committed by the people to the government. . . . Such a trust cannot be granted away." *Id*. at 5-6. . . .

After discussing the non-exclusive factors listed in *Cherokee*, the Trial Court concluded that CCA was operating as the functional equivalent of a governmental agency and, therefore, was subject to the provisions of the Public Records Act. The Trial Court then discussed the 6 specific requests made by Plaintiff as quoted previously in this Opinion. The Trial Court ordered that the documents sought in requests numbered 1 through 4 and 6 be made available for inspection and copying except: (1) any settlements that were sealed by a court; and (2) any court orders responsive to the 4th request which the originating court placed under seal. As to the

spreadsheets, etc., sought in the 5th request, the Trial Court concluded that Plaintiff was entitled to a summary or spreadsheet "showing all litigation concluded against CCA in Tennessee, which resulted in payment of money damages or settlements or sanctions or claims or attorney's fees from January 1, 2002 through and including the date of the letter."

As to Plaintiff's request for attorney fees, that request was denied. The Trial Court concluded that it was reasonable for CCA to refuse inspection of its records since CCA was a private entity. The Trial Court added that the "Public Records Act does not authorize a recovery of attorney fees if the withholding governmental entity acts with a good faith belief that its records are exempted from disclosure." The Trial Court specifically found that CCA was acting in good faith and, therefore, an attorney fee award was not proper.

CCA appeals raising several issues. First, CCA argues that the Trial Court erred when it concluded that CCA was operating as the functional equivalent of a governmental agency. Second, CCA claims that the Trial Court erred by not finding that the Private Prison Contracting Act controlled which documents must be made public. Finally, CCA claims the Trial Court erred when it ordered production of certain documents because production of those documents violated the work product doctrine or because the documents were unrelated to CCA's contracts with the State and local governments. Plaintiff asserts that the Trial Court's rulings on the above issues were correct. The only issue raised by Plaintiff is his claim that the Trial Court erred when it refused to award him attorney fees incurred in prosecuting this case.[3]

### Discussion

The standard of review in this Public Records Act case is set forth in *Memphis Publ'g Co. v. Cherokee Children & Family Servs.*, 87 S.W.3d 67 (Tenn. 2002) and involves a question of law: "Our determination whether the Tennessee Public Records Act applies to the records in . . . [the defendant's] possession is a question of law." *Id.* at 74. With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address the issues with respect to the South Central Correctional Center located in Clifton, Tennessee. This is the only facility operated by CCA pursuant to a direct contract with the State of Tennessee. The issues as to this facility are: (1) whether CCA is operating the South Central Correctional Center as the functional equivalent of a state agency and, if so, (2) whether the requested documents as to that facility are covered by the Public Records Act.

---

[3] An Amicus Curiae brief was filed by the Tennessee Secondary School Athletic Association ("TSSAA"). TSSAA requests this Court reverse the Trial Court's finding that CCA was subject to the Public Records Act. An Amicus Curiae brief also was filed collectively by The American Civil Liberties Union of Tennessee, The Associated Press, The Society of Professional Journalists, The Reporters Committee for Freedom of the Press, The American Society of Newspaper Editors, and The Association of Capitol Reporters and Editors. These entities request this Court affirm the judgment of the Trial Court except as to its refusal to award Plaintiff attorney fees.

In *Cherokee*, *supra*, our Supreme Court discussed the various approaches taken by other jurisdictions when deciding whether records in the possession of private entities performing public functions should be considered public records. After so doing, the Court concluded:

> Our review of authority from other jurisdictions persuades us that the functional equivalency approach . . . provides a superior means for applying public records laws to private entities which perform "contracted out" governmental services. As the facts of these cases demonstrate, private entities that perform public services on behalf of a government often do so as independent contractors. Nonetheless, the public's fundamental right to scrutinize the performance of public services and the expenditure of public funds should not be subverted by government or by private entity merely because public duties have been delegated to an independent contractor. When a private entity's relationship with the government is so extensive that the entity serves as the functional equivalent of a governmental agency, the accountability created by public oversight should be preserved.

> Consequently, in light of our duty to construe the Tennessee Public Records Act liberally in favor of "the fullest possible public access to public records," we follow the Connecticut Supreme Court and interpret records "made or received . . . in connection with the transaction of official business by any governmental agency" to include those records in the hands of any private entity which operates as the functional equivalent of a governmental agency. In making this determination, we look to the totality of the circumstances in each given case, and no single factor will be dispositive. The cornerstone of this analysis, of course, is whether and to what extent the entity performs a governmental or public function, for we intend by our holding to ensure that a governmental agency cannot, intentionally or unintentionally, avoid its disclosure obligations under the Act by contractually delegating its responsibilities to a private entity. Beyond this consideration, additional factors relevant to the analysis include, but are not limited to, (1) the level of government funding of the entity; (2) the extent of government involvement with, regulation of, or control over the entity; and (3) whether the entity was created by an act of the legislature or previously determined by law to be open to public access.

> We caution that our holding clearly is not intended to allow public access to the records of every private entity which provides any

specific, contracted-for services to governmental agencies. A private business does not open its records to public scrutiny merely by doing business with, or performing services on behalf of, state or municipal government. But when an entity assumes responsibility for providing public functions to such an extent that it becomes the functional equivalent of a governmental agency, the Tennessee Public Records Act guarantees that the entity is held accountable to the public for its performance of those functions.

*Cherokee*, 87 S.W.3d at 78-79.

With all due respect to CCA, this Court is at a loss as to how operating a state prison could be considered anything less than a governmental function. As noted by the Trial Court, the Tennessee Constitution requires the State to provide for its prisoners. See Tenn. Const. art. 1, § 32 ("That the erection of safe prisons, the inspection of prisons, and the humane treatment of prisoners, shall be provided for."). This Constitutional requirement was not eliminated with the passage of the Private Prison Contracting Act of 1986. While this Act does allow the State to contract out certain correctional services, the statute does not change the fact that the State ultimately is responsible for providing these services. In other words, the State still must provide the constitutionally required services; it just does so, in part, through its contract with CCA. In addition, the State monitors CCA to ensure that its contractual obligations are fulfilled,[4] and the State retains its authority over the inmates' sentences and other aspects of their incarceration. Tenn. Code Ann. § 41-24-110 provides that:

> **Powers and duties not delegable to contractor.** – No contract for correctional services shall authorize, allow or imply a delegation of the authority or responsibility of the commissioner to a prison contractor for any of the following:
>
> (1) Developing and implementing procedures for calculating inmate release and parole eligibility dates;

---

[4] Tenn. Code Ann. § 41-24-109 (2006) provides as follows:

> **Monitoring of contractor performance – Reports.** – In addition to other powers and duties prescribed by law, the commissioner shall monitor any contracts with prison contractors providing correctional services and shall report at least annually, or as requested, to the select oversight committee on corrections or any other legislative committee regarding the performance of the contractor. The comptroller of the treasury shall audit the performance of the department of correction and the private contractor to ensure that the state is receiving the quality and level of services as described in the contract based upon the performance criteria, the monitoring process, and any applicable sanctions that might be incurred. The comptroller shall report annually or as requested to the select oversight committee on corrections.

(2) Developing and implementing procedures for calculating and awarding sentence credits;

(3) Approving inmates for furlough and work release;

(4) Approving the type of work inmates may perform, and the wages or sentence credits which may be given to inmates engaging in that work; and

(5) Granting, denying or revoking sentence credits; placing an inmate under less restrictive custody or more restrictive custody; or taking any disciplinary actions.

Tenn. Code Ann. § 41-24-110 (2006).

As to funding, Groom's affidavit provides that in 2007, contracts with Tennessee state and local governments comprised only 11.5% of its overall revenue. However, the affidavit is silent as to how much of CCA's total revenue generated in Tennessee comes from its contracts with the State and local governments. That percentage likely is quite high, and CCA never argues otherwise.

In short, we conclude, without difficulty, that the Trial Court correctly determined that with respect to the South Central Correctional Center in Clifton, Tennessee, CCA is operating that facility as the functional equivalent of a state agency pursuant to the analysis set forth in *Cherokee*. The providing of prisons is a responsibility that the State cannot delegate to a private entity. While the State can contract with a private entity such as CCA to operate a prison consistent with the provisions of the Private Prison Contracting Act of 1986, the ultimate responsibility to provide for its prisoners belongs to the State of Tennessee. *See* W.J. Michael Cody and Andy D. Bennett[5], *The Privatization of Correctional Institutions: The Tennessee Experience*, 40 Vand. L. Rev. 829 (1987):

> [Operating correctional facilities] is not an area analogous to providing hospitals or fire protection. Operating correctional facilities is more than a traditional state function: the state has no higher duty than to ensure that those persons who violate society's laws are punished. Fulfilling that duty is essential to the integrity of the government and to the protection of the public. It is not a duty that can legally or morally be handed to a private party and then ignored. The involvement of private parties in the corrections process

---

[5] At the time this article was written in 1987, Andy D. Bennett was the Deputy Attorney General for the Legislative Affairs and Reporter Division of the Tennessee Attorney General's Office. He was appointed to the Middle Section of the Tennessee Court of Appeals in September 2007.

may produce benefits, but it must be limited to its proper scope under state control.

*Id*., at 849; *see also Allen v. Day*, 213 S.W.3d 244, 263 (Tenn. Ct. App. 2006) (Cottrell, J., concurring)(Explaining that incarceration is a prime example of one of the activities "traditionally performed by state and local governments in fulfilling their roles."); Op. Tenn. Att'y Gen. No. 85-286 (Nov. 27, 1985) ([D]etention has traditionally been considered an exclusive prerogative of the state . . . .").

Next, we address CCA's claim that, with respect to the South Central Correctional Center, the Private Prison Contracting Act of 1986 limits the documents that must be made available to Plaintiff. The Public Records Act expresses the General Assembly's intent generally to make state, county, and municipal records open to the public "unless otherwise provided by state law." Tenn. Code Ann. § 10-7-503(a)(2)(A) (Supp. 2008).

In *Cater v. Bell*, 279 S.W.3d 560 (Tenn. 2009), the Supreme Court set forth principles to utilize when interpreting a statute:

> The most basic principle of statutory construction is to ascertain and give effect to legislative intent without broadening the statute beyond its intended scope. *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008). When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language and, in that instance, we enforce the language without reference to the broader statutory intent, legislative history, or other sources. *Overstreet v. TRW Commercial Steering Div.*, 256 S.W.3d 626, 630 (Tenn. 2008). Statutes relating to the same subject or having a common purpose should be construed together. *Lawrence County Educ. Ass'n v. Lawrence County Bd. of Educ.*, 244 S.W.3d 302, 309 (Tenn. 2007). We must presume that the General Assembly is aware of prior enactments and of decisions of the courts when enacting legislation. *Ki v. State*, 78 S.W.3d 876, 879 (Tenn. 2002).

*Carter*, 279 S.W.3d at 564.

In addition to the principles set forth in *Carter*, we also avoid statutory interpretations that would render part of a statute meaningless. For example, in *In re Estate of Nelson*, No. W2006-00030-COA-R3-CV, 2007 WL 851265 (Tenn. Ct. App. Mar. 22, 2007), *no appl. perm. appeal filed*, we stated:

> Adhering to general principles of statutory construction, we read statutory language according to its plain meaning, and if it is

-13-

unambiguous, we cannot force an interpretation that would alter the statute's application. *See Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Where an ambiguity exists, we seek to ascertain the legislature's intent and purpose by looking to the entire statutory scheme and by considering the purpose for which the language was selected. *See id*. In interpreting the provisions of Tennessee Code Annotated Section 45-2-703, as with any other portions of the same statute, this Court reads the provisions *in pari materia* and presumes that the legislature intended for each word in the statute to have meaning. *Faust v. Metro. Gov't of Nashville*, 206 S.W.3d 475, 489-90 (Tenn. Ct. App. 2006). Thus, we endeavor to effectuate the intent of the legislature by avoiding an interpretation that would render the statute's language meaningless, redundant, or superfluous. *Eastman Chem. Co.*, 151 S.W.3d at 507; *Faust*, 206 S.W.3d at 489 (quoting *Tidwell v. Collins*, 522 S.W.2d 674, 676-77 (Tenn. 1975)); *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002) ("The Court has a duty to construe a statute so that no part will be inoperative, superfluous, void or insignificant. The Court must give effect to every word, phrase, clause, and sentence of the Act in order to achieve the Legislature's intent, and it must construe a statute so that no section will destroy another." (citations omitted)).

*Estate of Nelson*, 2007 WL 851265, at *10. *See also Culbreath v. First Tenn. Bank Nat'l Ass'n*, 44 S.W.3d 518, 524 (Tenn. 2001) ("[W]e must interpret the statute 'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'") (quoting *Cafarelli v. Yancy*, 226 F.3d 492, 499 (6th Cir. 2000)).

CCA relies on Tenn. Code Ann. § 41-24-117 (2006) when arguing that only limited documents in its possession pertaining to the South Central Correctional Center must be produced. Tenn. Code Ann. § 41-24-117 is part of the Private Prison Contracting Act of 1986. This statute provides:

> **Records relating to inmates in private facilities.** – The records and other documents concerning any inmate who is sentenced to the custody of the department of correction and is being housed in a prison or facility operated by a private prison contractor shall be public records to the same extent such records are public if an inmate is being housed in a department of correction facility.

CCA argues that this statute expresses the General Assembly's intent to make available through a private prison contractor only those *inmate* documents that would otherwise be available through the Public Records Act if the prison were being operated by the Department of

Correction, and all other records of the private prison contractor not so identified are not public records. Plaintiff, on the other hand, argues that all of the records he requested are otherwise available under the Public Records Act and that Tenn. Code Ann. § 41-24-117 does nothing to change this result.

We agree with the interpretation placed on the statute by CCA. We conclude that Tenn. Code Ann. § 41-24-117 is intended to state exactly which documents in the hands of a private prison contractor operating a prison pursuant to the Private Prison Contracting Act are to be made available to the public. Any documents not so identified are not to be considered public records in the possession of a private prison contractor, such as CCA. To hold otherwise (i.e., by holding that documents not covered by this statute still must be made available pursuant to the Public Records Act) would result in Tenn. Code Ann. § 41-24-117 having no purpose whatsoever other than to merely restate the result to be reached under the Public Records Act. This would render Tenn. Code Ann. § 41-24-117 both meaningless and superfluous, a result we are to avoid if possible.

As stated previously, the Public Records Act expresses the General Assembly's intent generally to make state, county, and municipal records open to the public "unless otherwise provided by state law." Tenn. Code Ann. § 10-7-503(a)(2)(A). Thus, the General Assembly has reserved to itself the right to exempt documents from the coverage of the Public Records Act. We hold that in order to give Tenn. Code Ann. § 41-24-117 any meaning, that statute must be interpreted as expressing the General Assembly's intent to limit the records that are to be considered "public records" in the hands of a private prison contractor operating a prison pursuant to the Private Prison Contracting Act of 1986, even though the private prison contractor is functioning as a state agency. This is the General Assembly's prerogative. If, in our attempt to give meaning to Tenn. Code Ann. § 41-24-117 as we must, we have misinterpreted the General Assembly's intent, it is, of course, free to amend the statute to more clearly set forth its intent in passing the applicable statute.

In summary, as to the South Central Correctional Center, we find that: (1) CCA is operating that facility as the functional equivalent of a state agency; and (2) only the records identified by Tenn. Code Ann. § 41-24-117 must be made available pursuant to the Public Records Act.

We next discuss the other facilities operated by CCA in Tennessee. These facilities are not being operated pursuant to the Private Prison Contracting Act of 1986 as that statute, by its own terms, authorizes the State to contract with a private entity only for the operation of one prison. Specifically, Tenn. Code Ann. § 41-24-103(c) (2006) states:

> A contract for correctional services as defined in § 41-24-102(2)(F) is authorized only for one (1) medium security or minimum security facility opened after July 1, 1991, and only according to the requirements and procedures specified in this chapter. No contract shall be authorized for a facility intended primarily to serve special needs inmates.

CCA's other facilities, i.e., facilities being operated pursuant to contracts with local governmental entities rather than the State of Tennessee, are being operated pursuant to the County Correctional Incentives Act of 1981, Tenn. Code Ann. § 41-8-101, *et seq*. Pursuant to this statute, local county governments are authorized to house certain state inmates sentenced to the Department of Correction. In turn, the counties are reimbursed by the State. The counties also are permitted to subcontract with private entities, such as CCA, to provide these correctional services. For example, CCA operates two facilities in Hardeman County pursuant to this statutory scheme.[6] The express purpose of the County Correctional Incentives Act is to:

> [Provide] financial incentives to counties to house additional nondangerous felony offenders locally. The purpose of the chapter is to mutually benefit state and county governments by:
>
> (1) Helping alleviate overcrowding in state correctional facilities and reducing high operation costs; and
>
> (2) Assisting counties in upgrading local correctional facilities and programs.

Tenn. Code Ann. § 41-8-102 (2006).

For the reasons set forth previously in this Opinion, we readily find that these facilities likewise are being operated by CCA as the functional equivalent of a governmental agency. Specifically, by statutory authorization, instead of contracting directly with a private entity, the State has contracted with a county government which, in turn, has contracted with a private entity. By operating these facilities, CCA is, nevertheless, providing a governmental function. In short, private entities cannot legally imprison someone. This must be done by the government, whether federal, state, or local. In other words, it is the act of imprisonment that is the governmental function, regardless of whether the inmate is imprisoned pursuant to federal, state, or local laws.[7] In addition, pursuant to the County Correctional Incentives Act, there still is significant governmental oversight for prisoners being housed in accordance with this Act.[8]

---

[6] CCA operates both the Hardeman County Correctional Center and the Whiteville Correctional Facility pursuant to contracts with the Hardeman County Correctional Facilities Corporation. Both of these facilities are located in Whiteville, Tennessee.

[7] We reach this same result even if these facilities are housing inmates who were not sentenced to the custody of the Department of Correction because their sentence was less than one year but who, nevertheless, are in the county's custody and being detained at the facility.

[8] For those counties who choose to house state prisoners at their local facilities, the county contracts with the Tennessee Department of Correction. "Under the authority of T.C.A. § 41-8-108, the Department of Correction is authorized and directed to establish rules for the general administration of the County Correctional Incentives Act." Tenn. Comp. R. & Regs. 0420-2-3-.01. When the services are subcontracted out by a county to a private contractor, the

(continued...)

Having concluded that CCA's other identified facilities in Tennessee are being operated as the functional equivalent of a governmental agency, the next issue is whether the public records that must be made available from these facilities are limited by Tenn. Code Ann. § 41-24-117 (2006) in the same manner the records of the South Central Correctional Center are limited. For the reasons set forth previously, we conclude that these other facilities are not being operated pursuant to the Private Prison Contracting Act and, therefore, Tenn. Code Ann. § 41-24-117 does not apply and cannot serve as the basis in which to limit public documents otherwise available under the Public Records Act.

In summary up to this point, we conclude that with respect to all of the facilities operated by CCA in Tennessee, CCA is operating these facilities as the functional equivalent of a governmental agency. As to the South Central Correctional Center, the only records available to Plaintiff from CCA are those identified in the Private Prison Contracting Act at Tenn. Code Ann. § 41-24-117. As to the remaining facilities, the Private Prison Contracting Act is not applicable to those facilities and, therefore, Tenn. Code Ann. § 41-24-117 does not operate to limit the records available pursuant to the Public Records Act.

Unfortunately, our inquiry is not quite over as there are several other points we must address. First, CCA has maintained throughout this litigation that many of the documents sought by Plaintiff are protected from disclosure pursuant to the attorney work product doctrine. The Trial Court never determined whether the attorney work product doctrine does protect any of the requested documents from disclosure. On remand, the Trial Court must make this determination.

Second, CCA argues that the Trial Court's order requiring CCA to produce documents was overbroad and must be limited to CCA's management of Tennessee state and local prisons. The Public Records Act defines "public records" as follows:

> "Public record or records" or "state record or records" means all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, or other material, regardless of physical form or characteristics *made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency*[.]

Tenn. Code Ann. § 10-7-301(6) (Supp. 2008). On remand, the Trial Court also must determine if any of the records sought by Plaintiff are outside the scope of Tenn. Code Ann. § 10-7-301(6). In other words, Plaintiff is not entitled to documents that were not "made or received pursuant to law

---

[8](...continued)
private contractor must comply with the various requirements of the County Correctional Incentives Act. *See* Tenn. Comp. R. & Regs. 0420-2-3-.09 ("Any county which contracts with a private nongovernmental entity for management and operation of its local correction facility must still comply with the procedures and requirements set forth in these rules in order to receive reimbursement from the state based upon the reasonable allowable cost of housing state felons.").

or ordinance or in connection with the transaction of official business by [CCA acting as a] governmental agency[.]"

Third, we must review the Trial Court's determination that Plaintiff was not entitled to an award of attorney fees. As relevant to this appeal, Tenn. Code Ann. § 10-7-505(g) (Supp. 2008) provides that:

> If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees, against the nondisclosing governmental entity. . . .

In *Memphis Publ'g Co. v. Cherokee Children & Family Servs.*, 87 S.W.3d 67 (Tenn. 2002) our Supreme Court explained:

> Under the Act, the decision whether to award attorney's fees is left to the discretion of the trial court; consequently, we will not disturb that decision absent clear evidence of an abuse of that discretion. Tenn. Code Ann. § 10-7-505(g) (1999); *see also Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995) ("The allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion.").

*Cherokee*, 87 S.W.3d at 80 n.15.

Given the complicated nature of this case, we cannot conclude that the Trial Court abused its discretion when it refused to award Plaintiff attorney fees. The record fully supports the Trial Court's conclusion that CCA was acting in good faith. For this same reason, we decline to award Plaintiff attorney fees incurred on appeal.

Finally, we note that our various holdings affect only the documents in the possession of CCA. Our conclusions do not affect whether the State or local governments contracting with CCA must supply these documents in their possession, if so requested. Likewise, our holding is not intended to affect whether Plaintiff can obtain certain of the documents he seeks from the various clerks of the courts. Thus, to the extent Plaintiff's request for documents has been limited, some of these records are nevertheless available to Plaintiff from other governmental sources. As a result, the "accountability created by public oversight . . . [will] be preserved," and the governmental entities contracting with CCA will not be able to avoid their disclosure obligations based on the contents of this Opinion. *See Cherokee*, 87 S.W.3d at 79.

We conclude that: (1) CCA is operating all of its facilities in Tennessee as the functional equivalent of a governmental agency; (2) as to CCA's contract with the State to operate the South Central Correctional Center, the only records subject to being produced pursuant to the Public Records Act are those identified in Tenn. Code Ann. § 41-24-117; however, because Plaintiff did not follow the proper procedure when requesting these documents, his request as it pertains to the South Central Correctional Center is dismissed[9]; (3) as to the facilities operated by CCA pursuant to the County Correctional Incentives Act, the documents subject to production are not limited by Tenn. Code Ann. § 41-24-117; (4) on remand, the Trial Court must determine if any of the requested documents are not subject to production because they were not "made or received pursuant to law or ordinance or in connection with the transaction of official business by [CCA acting as a] governmental agency"; (5) on remand, the Trial Court must determine if any of the requested documents are not subject to production because they are protected from disclosure pursuant to the attorney work product doctrine or any other law; (6) the judgment of the Trial Court refusing to award attorney fees to Plaintiff is affirmed; and (7) Plaintiff is not entitled to attorney fees incurred on appeal.

## Conclusion

The judgment of the Trial Court is affirmed in part and reversed in part. This case is remanded to the Chancery Court for Davidson County for further proceedings consistent with this Opinion and for collection of costs below. Costs on appeal are taxed one-half to the Appellant, Corrections Corporation of America, and its surety, and one-half to the Appellee, Alex Friedmann, for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE

---

[9] To the extent that any of the records sought by Plaintiff pertaining to the South Central Correctional Center are covered by Tenn. Code Ann. § 41-24-117, Tenn. Comp. R. & Regs. 0420-01-02-.04 sets forth the procedure for obtaining these records, which include directing the request to the Public Information Officer of the Department of Correction, as opposed to CCA.