IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 27, 2012 Session

# ALEX FRIEDMANN, INDIVIDUALLY AND AS AN ASSOCIATE EDITOR OF PRISON LEGAL NEWS v. CORRECTIONS CORPORATION OF AMERICA

**Appeal from the Chancery Court for Davidson County**
**No. 08-1105-I     Claudia Bonnyman, Chancellor**

---

**No. M2012-00212-COA-R3-CV - Filed February 28, 2013**

---

This is the second appeal in an action seeking settlement agreements and settlement reports from Corrections Corporation of America pursuant to the Public Records Act, Tennessee Code Annotated § 10-7-301 *et seq*. In the first appeal, this court determined that CCA is the functional equivalent of a governmental entity in operating correctional facilities and remanded the action to the trial court to determine whether the documents requested by the petitioner fell within the statutory definition of public records set forth at Tennessee Code Annotated § 10-7-301. On remand, CCA refused to turn over two categories of documents, settlement agreements and settlement reports, arising out of inmate litigation, arguing that they did not fall within the statutory definition of public records and are confidential. CCA additionally argued that the settlement reports are protected as attorney work product. The trial court held that both the settlement agreements and reports are public records, that the settlement reports do not constitute attorney work product, that CCA is required to produce the settlement agreements and reports, and that the petitioner is entitled to reasonable attorney's fees pursuant to Tennessee Code Annotated § 10-7-505(g). We affirm the finding that the settlement agreements are public records and that CCA is required to produce the settlement agreements. We also affirm the trial court's findings that the settlement reports are public records and that CCA has failed to demonstrate that the settlement reports were produced "in anticipation of litigation;" therefore, the reports are not attorney work product and CCA must produce the reports. Further, we affirm the award of attorney's fees incurred at trial that pertained to requiring CCA to produce the settlement agreements. Finally, we find the petitioner is entitled to recover attorney's fees and expenses incurred on appeal to the extent they pertain to the settlement agreements, but not the settlement reports. On remand, the trial court shall make the appropriate award.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Joseph F. Welborn, III, and Jason W. Callen, Nashville, Tennessee, for the appellant, Corrections Corporation of America.

Andrew C. Clarke, Memphis, Tennessee, for the appellee, Alex Friedmann, Individually and as Associate Editor of Prison Legal News.

## OPINION

Petitioner, Alex Friedmann, is the editor of Prison Legal News. Defendant, Corrections Corporation of America ("CCA"), is a privately incorporated correctional service company headquartered in Nashville, Tennessee, which owns, operates, and manages numerous correctional facilities, five of which are in the State of Tennessee.

In April 2007, Friedmann contacted CCA requesting numerous documents pursuant to the Public Records Act. A few weeks after receiving Friedmann's initial request for documents, CCA sent a response stating in summary:

> (1) that it was a private corporation and not subject to the Public Records Act; (2) CCA was not operating as the functional equivalent of a governmental agency; (3) even if CCA was subject to the Public Records Act, many of the requested documents nevertheless exceeded the scope of the Public Records Act because they were protected by the attorney work product doctrine or sealed by order of a court; (4) many of the requested documents were obtainable by Plaintiff either through the applicable court clerk's office or the governmental agency with which CCA had contracted; and (5) gathering all of the requested documents would be overly burdensome.

*Friedmann v. Corrections Corp. of Am.*, 310 S.W.3d 366, 370 (Tenn. Ct. App. 2009).

On May 19, 2008, Friedmann filed a petition in the Davidson County Chancery Court seeking access to the requested documents on the grounds that the documents were public records under the Tennessee Public Records Act ("the Act"), Tennessee Code Annotated § 10-7-301 *et seq.*, that he had requested the documents, and that CCA had refused his request. Friedmann asserted that because CCA operated prisons for the State of Tennessee and local

governments, it was the functional equivalent of a governmental agency and, therefore, subject to the Act. CCA contended it was a private corporation and not subject to the Act. Following a hearing, the trial court found in favor of Friedmann and held that CCA was the functional equivalent of a governmental agency and ordered production of the requested documents. CCA appealed that decision.

This court's opinion in the first appeal of this case was filed on September 16, 2009. We held that CCA was operating its facilities as the functional equivalent of a governmental agency and remanded the matter to the trial court for the determination of several issues.[1] *Id*. at 380. On remand, the trial court was to determine if the records sought by Friedmann fell outside the scope of the definition of public records found at Tennessee Code Annotated § 10-7-301(6). *Id*. Such a determination was necessary because Friedmann would not be entitled to the records if they were not '"made or received pursuant to law or ordinance or in connection with the transaction of official business by [CCA acting as a] governmental agency."' *Id*. (quoting Tenn. Code Ann. § 10-7-301(6)). On remand, the trial court was also instructed to determine if the requested documents were not subject to production because they were protected from disclosure by the attorney work product doctrine or any other law. *Id*. at 381. In the first appeal, we also affirmed the trial court's denial of Friedmann's request for attorney's fees. *Id*. Both parties sought permission to appeal to the Tennessee Supreme Court pursuant to Tennessee Rule of Appellate Procedure 11; the request was denied on March 1, 2010. *Id*. at 366.

On remand, the parties engaged in extensive discovery, and the dispute regarding which records were to be produced was narrowed to two categories of documents: 1) releases, settlement agreements, and other documents reflecting the settlement and/or payment of claims and/or litigation against CCA facilities in Tennessee ("the settlement agreements"), and 2) spreadsheets or summaries of claims and/or litigation concluded against CCA in Tennessee ("the settlement reports"). The trial court held a hearing in November 2011 on the issues on remand as to these documents. The sole witness at the hearing was the Vice-President and General Counsel for CCA.

On December 1, 2011, the trial court issued a ruling from the bench, which was later incorporated into an order entered on January 3, 2012. In its order, the trial court held that

---

[1]The court also held that one facility, the South Central Correctional Center, was being operated pursuant to the Private Prison Contracting Act of 1986 ("PPCA"), and thus the provisions of that limited the documents which CCA was required to produce. *Friedmann*, 310 S.W.3d at 377-80. The other facilities, however, were not operated pursuant to that statute and therefore the PPCA did not apply to those facilities. *Id*. at 380. The court held that Friedmann failed to request documents properly as to the SCCC under the PPCA and therefore his request as to that facility was dismissed. *Id*. at 381.

the documents fell within the definition of public records in Tennessee Code Annotated § 10-7-301(6) as the documents were "made or received pursuant to law or ordinance or in connection with the transaction of official business by [CCA] acting as a governmental agency." The court held that the settlement agreements were public records because they were "connected to CCA's official business in part because the corrections business is of necessity a high volume litigation business." The court also found these documents were not confidential, and further held that the documents were not protected by the attorney work product doctrine or any other state law. The court held that the second set of documents requested, the settlement reports, were not exempt from the Act because "reports about resolution of claims which contain the claim name and settlement amount are not work product." Therefore, the documents were required to be produced under the Act. The court reserved the issue of whether Friedmann was entitled to recover his attorney's fees.

Thereafter, Friedmann submitted an affidavit on his attorney's fees and, following a hearing, the trial court awarded Friedmann his attorney's fees upon the finding that the failure to furnish the settlement agreements was in bad faith, because the law was well-settled that they should be disclosed. The court found that the issue of the settlement reports was a closer call and therefore found no bad faith in their failure to be furnished. The court then awarded attorney's fees in the amount of $28,367.50. CCA filed a timely appeal.

## ANALYSIS

On appeal, CCA reiterates its arguments made before the trial court. First, CCA contends that the trial court erred in finding that the requested documents, the settlement agreements and settlement reports, are public records as defined in the Public Records Act, Tennessee Code Annotated § 10-7-301(6). Second, CCA contends that the settlement reports are protected from disclosure because they are attorney work product. Third, CCA contends that the trial court erred in awarding Friedmann his reasonable attorney's fees because he failed to demonstrate that CCA acted willfully and in bad faith when it refused disclosure as required by the Act. We shall address each issue in turn.

### I. STANDARD OF REVIEW

The determination of whether the requested documents fell within the statutory definition of public records contained in Tennessee Code Annotated § 10-7-301(6) is a question of law. *Memphis Publishing Co. v. Cherokee Children & Family Servs.*, 87 S.W.3d 67, 74 (Tenn. 2002). Thus, our review of the trial court's decision is de novo upon the record with no presumption of correctness. *Id.*

## II. WHETHER THE REQUESTED DOCUMENTS ARE PUBLIC RECORDS

"The Tennessee Public Records Act 'governs the right of access to records of government agencies in this state.'" *Memphis Publishing Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d at 74 (quoting *Cole v. Campbell*, 968 S.W.2d 274, 275 (Tenn. 1998)). When construing the Act, the General Assembly has directed that public records statutes are "to be broadly construed so as to give the fullest possible public access to records." *Brennan v. Giles Cnty. Bd. of Educ.*, No.M2004-00998-COA-R3-CV, 2005 WL 1996625, at *2 (Tenn. Ct. App. Aug. 18, 2005) (quoting Tenn. Code Ann. § 10-7-505(d); citing *Chattanooga Publishing Co. v. Hamilton Co. Election Comm'n*, No. E2003-00076-COA-R3-CV, 2003 WL 22469808, at * 4 (Tenn. Ct. App. Oct. 31, 2003)). In *Memphis Publishing Co. v. Cherokee Children & Family Servs.*, our Supreme Court addressed the applicability of the Public Records Act to private entities performing government functions. The court recognized that "public access to information may be obstructed when governmental functions are transferred to the private sector." *Id*. at 77. The court stated that "the public's fundamental right to scrutinize the performance of public services and the expenditure of public funds should not be subverted by government or by private entity merely because public duties have been delegated to an independent contractor." *Id*. at 78. The court held that "[w]hen a private entity's relationship with the government is so extensive that the entity serves as the functional equivalent of a governmental agency, the accountability created by public oversight should be preserved." *Id*. at 78-79. The court then, again recognizing the liberality of construing the Public Records Act, held "that this included records in the hands of any private entity which operates as the functional equivalent of a state agency." *Id*. at 79. "[W]hen an entity assumes responsibility for providing public functions to such an extent that it becomes the functional equivalent of a governmental agency, the Tennessee Public Records Act guarantees that the entity is held accountable to the public for its performance of those functions." *Id*. The court then set forth the appropriate criteria for determining if a private entity is operating as the functional equivalent of a government agency. *See id.*

In *Friedmann v. Corrections Corp. of Am.*, 310 S.W.3d 366, this court applied the criteria established by our Supreme Court in *Memphis Publishing* and held that CCA was subject to the Public Records Act because it was the functional equivalent of a governmental agency. The court stated:

> With all due respect to CCA, this Court is at a loss as to how operating a state prison could be considered anything less than a governmental function. As noted by the Trial Court, the Tennessee Constitution requires the State to provide for its prisoners. *See* Tenn. Const. [a]rt. 1, § 32 ("That the erection of state prisons, the inspection of prisons, and the humane treatment of prisoners, shall be provided for.").

*Id*. at 375. As to the facilities at issue in this appeal,[2] the court recognized that:

> [W]e readily find that these facilities likewise are being operated by CCA as the functional equivalent of a governmental agency. Specifically, by statutory authorization, instead of contracting directly with a private entity, the State has contracted with a county government which, in turn, has contracted with a private entity. By operating these facilities, CCA is, nevertheless, providing a governmental function. In short, private entities cannot legally imprison someone. This must be done by the government, whether federal, state, or local. In other words, it is the act of imprisonment that is the governmental function, regardless of whether the inmate is imprisoned pursuant to federal, state, or local laws. In addition, pursuant to the County Correctional Incentives Act, there still is significant oversight for prisoners being housed in accordance with this Act.

*Id*. at 379 (footnote omitted). This court then remanded the action for a determination of whether the requested documents fell within the statutory definition of public records set forth at Tennessee Code Annotated § 10-7-301(6), which defines public records that are subject to disclosure under the act as follows:[3]

> (6) "Public record or records" or "state record or records" means all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, or other material, regardless of physical form or characteristics made or received pursuant to law or ordinance *or in connection with the transaction of official business by any governmental agency*;

(Emphasis added).

CCA's argument centers on the italicized language in the statute quoted above. CCA contends that in this court's first opinion in *Friedmann*, this court "implicitly recognized" that CCA was different from cases where our courts have held that private entities were the functional equivalent of a governmental agency. CCA contends that it is the functional

---

[2]The court found that one facility not at issue in this appeal, the South Central Correctional Facility, which was operated pursuant to a direct contract between the State of Tennessee and CCA pursuant to the Private Prison Contracting Act, was an obvious delegation of the constitutional function of imprisonment.

[3]This court also remanded for a determination of whether any of the documents requested were protected as attorney work product, which issue we shall address in the next section of this opinion.

equivalent of a governmental agency *only* with respect to its "operation of correctional facilities," therefore the requested documents, "litigation materials" as CCA refers to them, are not public records, because they were not created in connection with the transaction of the official business of operating the correctional facilities. Instead, CCA contends the requested documents were created in connection with a completely separate aspect of its business, that of litigation; therefore, they do not fall within the definition of public records.

We respectfully disagree with CCA's conclusion. Settlement agreements have consistently been held to be public records by our courts. In *Allen v. Day*, this court found that the rule regarding alternative dispute resolution did not exempt confidential mediated settlement agreements from disclosure under the Public Records Act. *Allen v. Day*, 213 S.W.3d 244, 261-62 (Tenn. Ct. App. 2006). In *Allen*, the court addressed whether the management company was the functional equivalent of a government agency and thus subject to the Public Records Act. *Id*. at 252-56. The court, using the factors set forth in *Memphis Publishing v. Cherokee Children & Family Servs.*, determined that the management company was the functional equivalent of a government agency. *Id*. at 256. Once the court determined that the management company was the functional equivalent of a government agency, the court then addressed whether the Rule 31 mediated settlement was subject to disclosure under the Public Records Act. *Id*. at 261. The court noted that the parties agreed the settlement agreement was not exempt under the Act and that there was no exception for such disclosure under the Act because the settlement was reached in Rule 31 mediation. *Id*. at 261-62.

Further support that settlement agreements are subject to the Public Records Act is found in *Contemporary Media, Inc. v. City of Memphis*, No. 02A01-9807-CH00211, 1999 WL 292264 (Tenn. Ct. App. May 11, 1999). In *Contemporary Media*, this court addressed the issue of whether the trial court erred in awarding attorney's fees and costs in a public records request action. *Id* at *1. The action began when Contemporary Media, Inc. requested from the City of Memphis all documents relating to a settlement agreement reached between the city and a family in a civil rights action. *Id*. The City and family contended that the settlement agreement was confidential and not subject to disclosure. *Id*. The trial court ruled that the settlement agreement was a public record except to the extent that it may have been encompassed by a confidentiality order by a federal court. *Id*. at *2. Following a federal court's ruling that the confidentiality order did not prevent disclosure of the settlement agreement's terms, Contemporary Media sought attorney's fees pursuant to Tennessee Code Annotated § 10-7-505(g) and was awarded such fees by the trial court. *Id*. The City of Memphis appealed. *Id*. On appeal, the City of Memphis conceded that the settlement agreement constituted a public record; however, it argued that it withheld disclosure based on its belief that the confidentiality order prevented the disclosure. *Id*. at *4. This court in determining whether the City's argument that confidentiality prevented disclosure looked at

several cases and opinions and determined that a government agency cannot enter into confidential settlement agreements. *Id*. at *4-6 (citing *Cleveland Newspaper, Inc. v. Bradley Cnty. Mem. Hosp. Bd. of Directors*, 621 S.W.2d 763 (Tenn. Ct. App. 1981); *State ex rel. Sun Newspapers v. Westlake Bd. of Educ.*, 601 N.E.2d 173 (Ohio App. 1991); Tenn. Atty. Gen. Op. No. 96-144 (Dec. 3, 1996) ("An agreement by a governmental agency to restrict public access to public records that are not exempt under state law violates public policy and is unenforceable.")). In *The Tennesseean v. City of Lebanon*, No. M2002-02078-COA-R3-CV, 2004 WL 290705 (Tenn. Ct. App. Feb. 13, 2004), this court in holding that The Tennesseean was entitled to its attorney's fees in a public records request action noted that "[t]he question of whether a settlement agreement in litigation against a city is subject to disclosure under the Public Records Act was decided in *Contemporary Media, Inc. v. City of Memphis*," and thus found there was no basis to argue that a settlement agreement was confidential and not subject to disclosure under the Act. *Id* at *4.

The above cases demonstrate that settlement agreements are considered public records under the Public Records Act. Thus, as the functional equivalent of a government agency, CCA was required to turn over settlement agreements related to the operation of the correctional facilities unless otherwise provided by state law. *See* Tenn. Code Ann. § 10-7-503(a)(2)(A). Accordingly, we turn our attention to CCA's argument that the settlement agreements were not made in the operation of the correctional facilities, but were made in its litigation department.

CCA asserts that the facts of this case are distinguishable from other cases where private entities have been held to be the functional equivalent of government agencies and states that this court "implicitly" limited our finding regarding CCA as a government entity. We did not. In the first appeal, we affirmed the trial court's determination that CCA was the functional equivalent of a government agency in its management of correctional facilities. Nevertheless, in support of this argument, CCA cites to *Allen v. Day*, 213 S.W.3d 244, and *Memphis Publishing Co. v. City of Memphis*, 871 S.W.3d 687, to argue that, in these cases, the two private entities had contracts that were dedicated entirely to the state contract. CCA argues here that "CCA's performance of its Tennessee contracts encompasses only a tiny fraction of the company's overall operations" and that this was implicitly recognized by our previous holding.

In *Allen*, the settlement agreement subject to disclosure arose from a suit against the management company based on actions by its employees that occurred during the management of a public arena, which was the government function. *Allen*, 213 S.W.3d at 246, 252-56. As for *Memphis Publishing v. Cherokee Children & Family Servs.*, our Supreme Court held that records of the child care entity were subject to disclosure because the entirety of its business activities were servicing the government contracts, child care

services for indigent families. 87 S.W.3d at 79. Therefore, the court ruled that all of its records were subject to disclosure. *Id*. In this action, the litigation documents requested from CCA are related to its operation of the correctional facilities in Tennessee, not its operation of correctional facilities outside of Tennessee; therefore, CCA's reliance on the above cases is misplaced.

CCA additionally asserts that a document is *not* a public record if it was not created "for the purpose" of its operation of a correctional facility. Once again, we must respectfully disagree with this assertion. The language of the statute and the vast majority of case law clearly flies in the face of this interpretation. CCA is a private entity acting as the functional equivalent of a government agency in its operation of the correctional facilities on behalf of the local governments. Thus, the settlement agreements and reports were made "in connection with the transaction of official business by [CCA acting as a] governmental agency", therefore, they are public records as defined by Tennessee Code Annotated § 10-7-301(6).

This conclusion is supported by the ruling in *Memphis Publishing v. City of Memphis.* In that matter, deposition transcripts taken by an attorney hired by the city during a bankruptcy proceeding were found to be public records subject to disclosure under the Public Records Act as the depositions were made "in connection" with the official business of the city. *Memphis Publishing v. City of Memphis*, 871 S.W.2d 681 (Tenn. 1994). The court stated:

> With the proper expansive definition of "records" in mind, and in view of the fact that § 10-7-504 does not specifically except these documents from public view, we cannot say that these depositions transcripts are not material "made or received in connection with the transaction of official business" of these entities. The City and County took these depositions in a bankruptcy proceeding in an attempt to protect a substantial public investment in a large construction project. Given the broad construction placed on the above-quoted phrase in *Griffin*, and the liberal access provisions of the Act, the "official business" of the City and County cannot be interpreted so as to exclude legal action aimed at protecting the legitimate economic interests of those governmental entities.

*Id*. (emphasis added).

The language of the constitutional provision lends credence to our position. "That the erection of state prisons, the inspection of prisons, and the humane treatment of prisoners, shall be provided for." Tenn. Const. art. 1, § 32. Thus, any documents created in litigation

arising from the imprisonment of citizens of this state, which is a governmental function, would clearly be made "in connection with the transaction of official business," which would be the operation of a correctional facility. For example, suits arising from the treatment of a prisoner would directly correlate to the governmental function, thus, documents created from this litigation would fall within the definition of public records. Further, the Vice-President and General Counsel for CCA testified that CCA defends the lawsuits filed against it based upon its operation of the correctional facilities regardless of whether a government entity is also named and makes all litigation-related decisions, including whether a case is settled, without governmental input or approval. Nevertheless, CCA is required by its contract to notify the government entity when it is being sued, the government entity must approve defense counsel, and CCA must indemnify the government entity. The contract also provides for a "contract monitor," which is entitled to access any documents from CCA upon request. As our Supreme Court recognized in *Memphis Publishing v. Cherokee Children & Family Servs.*, "the public's fundamental right to scrutinize the performance of public services . . . should not be subverted by government or by private entity merely because public duties have been delegated to an independent contractor." 87 S.W.3d at 78. Therefore, we find that the settlement agreements fall within the definition of public records set forth in Tennessee Code Annotated § 10-7-301(6).

As for the settlement reports, while CCA contends that the settlement reports are not made in connection with the operation of the correctional facilities, but are created by CCA's litigation department solely to track its own litigation, we note that nothing contained in the report as set forth in an Exhibit entered before the trial court, contains any information outside of what is contained in the settlement agreement. The settlement report merely contains the case number and name, the CCA facility involved, the nature of the action, and the date and amount of the settlement. Thus, we find that the settlement reports also fall within the definition of public records set forth at Tennessee Code Annotated § 10-7-301(6).

### III. ATTORNEY WORK PRODUCT DOCTRINE

We now turn our attention to CCA's assertion that the settlement reports, even though public records, are not subject to disclosure because they are protected as attorney work product.[4]

"All state, county and municipal records shall at all times during business hours . . . be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, *unless otherwise provided by state law*." Tenn. Code Ann. § 10-7-503(a)(2)(A). Our courts have interpreted this language

---

[4]CCA does not contend that the settlement *agreements* are attorney work product.

-10-

to include exceptions contained in "the state constitution, common law, rules of court, and properly authorized rules and regulations." *The Tennesseean v. Tenn. Dep't of Personnel*, No. M2005-02578-COA-R3-CV, 2007 WL 1241337, at *5 (Tenn. Ct. App. Apr. 27, 2007) (citing *Swift v. Campbell*, 159 S.W.3d 565, 571 (Tenn. Ct. App. 2004)). The attorney work product doctrine is one of the exceptions to the Public Records Act. *Id*. at *10 (holding "[a]ny document that meets the definition of work product under Rule 26.02(3) of the Rules of Civil Procedure is exempt from the Act").

As the United States Supreme Court has explained, the essential purpose of the work product doctrine is to protect an attorney's mental processes. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 222 (Tenn. Ct. App. 2002) (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). Attorney work product can take one of three forms: "opinion" work product, "fact" or "ordinary" work product, or a combination of both. *Id.* at 221.

"Opinion" work product contains "an attorney's mental impressions, conclusions, opinions, or legal theories regarding the pending litigation." *Id*. "'Fact' or 'ordinary' work product includes documents prepared in anticipation of litigation or for trial that [does] not contain the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party in the litigation." *Id*.

By rule of procedure, Tennessee protects "any document prepared in anticipation of litigation by or for the attorney." Tenn. R. Civ. P. 26.02(3). To qualify as work product, it must be established: "(1) that the material sought is tangible, (2) that the documents were prepared in anticipation of litigation or trial, and (3) that the documents were prepared by or for legal counsel." *The Tennesseean,* 2007 WL 1241337, at *10 (citing Tenn. R. Civ. P. 26.02(3); *State ex rel Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 617 n.15 (Tenn. Ct. App. 2006)). The foregoing notwithstanding, the attorney work product doctrine "does not protect documents prepared in the regular course of business." *Boyd*, 88 S.W.3d at 225 n.33 (citing *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987); *Columbia/HCA Healthcare Corp. v. Eighth Judicial Dist. Ct.*, 936 P.2d 844 (Nev. 1997); *Cook v. Wake Cnty. Hosp. Sys.*, 482 S.E.2d 546 (N.C. Ct. App. 1997); *Federal Practice and Procedure* § 2024, at 346).

In this action, the settlement reports are tangible documents and the record reveals that the settlement reports were prepared by or at the request of legal counsel at CCA. Thus, two of the three essential elements have been established by CCA. The remaining element, and dispositive issue, is whether the settlement reports were "prepared in anticipation of litigation or trial" or prepared in the regular course of business of CCA in its operation of the correctional facilities. *See Boyd*, 88 S.W.3d at 225 n.33; *The Tennesseean,* 2007 WL

-11-

1241337, at *10. If CCA failed to establish the documents were prepared in anticipation of litigation, then the work product exception to disclosure does not apply and the documents must be disclosed pursuant to the Public Records Act.[5] *The Tennesseean,* 2007 WL 1241337, at *10.

This court addressed the attorney work product doctrine as an exception to the Public Records Act in *Arnold v. City of Chattanooga,* 19 S.W.3d 779 (Tenn. Ct. App. 1999). In *Arnold*, a newspaper publisher filed a Public Records Act petition seeking to inspect a management firm's reports on the city's acquisition of a water company. *Id.* at 782. The city contended that the reports were attorney work product. *Id.* The trial court held that the reports were not protected under Rule 26.02 because the action was not a "normal lawsuit" but one filed by a publisher because the city refused to produce the records, and that the reports were not protected because they were not prepared "to be used in this lawsuit (Public Records Act) to defeat the rights of the Petitioners." *Id.* at 782-83. We disagreed with both rulings and concluded that "materials which are prepared in anticipation of litigation need not be prepared for the specific case in which discovery is sought in order to be protected by the work product doctrine." *Id.* at 783-84 (citing *Downing v. Bowater*, 846 S.W.2d 265 (Tenn. Ct. App. 1992)). We also disagreed with the trial court's finding that the reports were not protected because a suit had not yet commenced, stating:

> The fact that [a] document may have been created before [a] complaint was actually filed does not exempt it from [the] scope of [the] work product doctrine. Litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document is to aid in possible future litigation.

*Id.* at 784. We further stated: "The possibility of avoiding litigation would not render the document any less 'work product' created in anticipation of litigation than if the suit had already been filed . . . [a]n attorney and client should not be disadvantaged simply because they were hoping to settle a case without filing a suit." *Id.* After examining all issues, we concluded that the documents sought by Arnold were created by the city in anticipation of

---

[5]Disputes concerning work product are generally in the context of discovery disputes, where one party serves a request for production of documents upon an adversary pursuant to Tennessee Rules of Civil Procedure 26.02 and 34. In that context, the requesting party must establish (1) that it has a substantial need for the materials and (2) that it is unable to obtain these materials or their substantial equivalent by other means without undue hardship. *See Boyd*, 88 S.W.3d at 221; *see also* Tenn. R. Civ. P. 26.02(3). As a general rule, the party seeking these documents pursuant to the above rules of discovery must establish that the facts in the requested documents are essential elements of its prima facie case. *Boyd*, 88 S.W.3d at 221-22. However, that is not the case when the documents are requested pursuant to the Public Records Act.

litigation because the city was contemplating either filing a condemnation action or acquiring the water company through a negotiation. *Id*.

In another instructive case, *Guardsmark v. Blue Cross and Blue Shield*, 206 F.R.D. 202 (W.D. Tenn. 2002), the federal district court addressed the issue of whether audit reports were protected as attorney work product under Federal Rule of Civil Procedure 26.02. The party opposing discovery insisted the audit reports were protected because they were "prepared in anticipation of litigation." *Id*. at 207. The district court determined that the "test question" for whether a document was work product was:

> "[W]hether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation;" and that "[f]or a document to meet this standard, the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable."

*Id*. at 209 (quoting *In re Sealed Case*, 146 F.3d 881 (D.C. Cir. 1998)). Applying this test, the district court found the audit reports were not prepared "because of the prospect of litigation" as there was no showing in the record that a lawyer, or any representative of the company seeking protection of the audit reports, had a subjective belief that litigation was a real possibility, and, even if someone had such a subjective belief, it would not have been objectively reasonable. *Id*. at 210.

The only evidence in this record pertaining to the settlement reports was the testimony of CCA's General Counsel and Vice-President Steve Groom. Mr. Groom testified that the database from which the settlement reports were created is a system CCA acquired to manage high-volume litigation and it is used by CCA to anticipate which types of cases may be filed and to aid the company in future litigation and settlements. He further stated that the database contains evaluations by attorneys of ongoing cases. As for the settlement reports, Mr. Groom testified that the reports were used to look back to see which areas were of concern and to be able to give advice on cases going forward.

Based upon the foregoing, we have concluded that CCA failed to satisfy the *Guardsmark* work product test and that the evidence preponderates in favor of the finding that the settlement reports at issue were prepared in the regular course of business of CCA's operation of the correctional facilities. Although other aspects of CCA's database and records that are not at issue here may qualify as attorney work product, the settlement reports Friedmann seeks pursuant to the Public Records Act do not.

We, therefore, affirm the trial court's ruling that the settlement reports requested pursuant to the Public Records Act at issue herein are public records and the reports do not qualify as attorney work product. Accordingly, CCA must disclose the settlement reports.

## V. ATTORNEY'S FEES

Last, we address CCA's contention that the trial court erred in awarding Friedmann his attorney's fees pursuant to Tennessee Code Annotated § 10-7-505(g), which provides that:

(g) If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees, against the nondisclosing governmental entity. In determining whether the action was willful, the court may consider any guidance provided to the records custodian by the office of open records counsel as created in title 8, chapter 4.

The willfulness requirement of the statute is synonymous with bad faith. *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999).

'Bad faith' is defined as

[t]he opposite of 'good faith', generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Term 'bad faith' is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

*Contemporary Media* [1999 WL 292264] (citing Black's Law Dictionary 127 (5th Ed. 1979)).

*Id*. Under the Public Records Act, the burden is on the refusing entity to justify a refusal of access. *The Tennesseean v. City of Lebanon*, 2004 WL 290705, at *9.

-14-

The trial court awarded Friedmann attorney's fees finding that the refusal of CCA to furnish the settlement agreements was in bad faith because the law was well-settled that the agreements were subject to disclosure as public records. The trial court, however, found that there was *not* bad faith by CCA in its refusal to furnish the settlement reports because it was a "close call" on whether they were subject to disclosure. Based upon these two findings, the trial court awarded Friedmann attorney's fees that pertained to the issue of the settlement agreements.

The award of attorney's fees pursuant to Tennessee Code Annotated § 10-7-505(g) is within the trial court's discretion. *Contemporary Media*, 1999 WL 292264, at *6. We will not disturb that decision absent a showing of an abuse of discretion. *Id*. We find the trial court did not abuse its discretion in finding CCA acted in bad faith in its refusal to disclose the settlement agreements. As the trial court noted, the law is well-settled that settlement agreements are subject to disclosure under the Public Records Act. As this court had previously held that CCA was acting as the functional equivalent of a government entity in its operation of the correctional facilities, the settlement agreements entered into in litigation made in connection with the operation of those facilities would be subject to disclosure. We, therefore, affirm the trial court's award of attorney's fees to Friedmann.

Friedmann also requests his reasonable attorney's fees incurred in this appeal. Although we have concluded that CCA is required to produce the settlement agreements and reports, we agree with the trial court that the issue of the settlement reports was a close call; thus, we find that Friedmann is not entitled to recover attorney's fees incurred that pertain to the settlement reports. It is within the discretion of the trial court to determine the amount of attorney's fees and expenses incurred on appeal Friedmann is entitled to recover. *See Schneider v. City of Jackson*, 226 S.W.3d 332, 348 (Tenn. 2007) (finding petitioners were entitled to their reasonable attorney's fees incurred on appeal in a Public Records Act action).

### In Conclusion

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal assessed against the Appellant, Corrections Corporation of America.

_____
FRANK G. CLEMENT, JR., JUDGE